UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO.: 9:15-CV-81229-MARRA/MATHEWMAN

ALEJANDRO ZENDEJAS,

      **Plaintiff,**

**v.**

EUGENIE H. REDMAN
COLIN J. SYQUIA and
SIMON NIZRI,

      **Defendants.**

_____/

### RESPONSE AND OPPOSITION OF PLAINTIFF ZENDEJAS
### TO MOTION FOR SUMMARY JUDGEMENT
### AS TO COUNTS VI AND VII BY DEFENDANT SYQUIA

Plaintiff Alejandro Zendejas ("Zendejas"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 56 and S.D. Fla.  L. R. 56.1, respectfully files this Response and Opposition to Defendant Colin Syquia's Motion for Summary Judgment as to Counts VI and VII of the First Amended Complaint [DE 57].   In conformity with S.D.Fl. Local Rule 56.1(a), Plaintiff's Response is accompanied by and Plaintiff has filed [DE 98] *Plaintiff's  Counter - Statement of Facts to Be Tried and Response to Defendant Colin Syquia's Statement of Undisputed Facts* ("Counter Statement") which  supports  this Response and Opposition.

### Summary of Argument

Defendant Syquia was never in privity with Plaintiff Zendejas.  Therefore, Mr. Syquia cannot invoke the Economic Loss Rule ("ELR") to claim the tort claims against him are barred. Mr. Syquia faces neither breach of contract nor breach of warranty claims. Those claims are faced only by Defendant Redman, and Mr. Syquia concedes that he is not liable for the

contractual breaches of his principal.  Mr. Syquia faces only the tort claims of fraud and negligent misrepresentation against him because he committed tortious acts and made tortious omissions to Plaintiff Zendejas prior to the formation of the contract between Plaintiff and Defendant Redman.  There is no breach of contract claim against Mr. Syquia into which those torts might collapse.

Additionally, even if the ELR were to be applied to Mr. Syquia, the Independent Tort Doctrine ("ITD"), which both predates and survived the recent contraction of the ELR by The Florida Supreme Court, allows tort claims arising from pre-contract conduct affecting the parties' fair and open negotiation of a contract to proceed concurrently with breach of contract claims.

Further, the horse "Vorst" is not considered a product under product liability law because Vorst is an animate, mutable entity, unlike an inanimate, unchanging manufactured article. This is distinct from considering Vorst to be a "good", which is not in dispute.  However, whether Vorst" is or is not a "product", subject to the narrowly-contracted product liability ELR, is irrelevant because Mr. Syquia was not in privity with Mr. Zendejas and therefore Syquia cannot invoke the ELR.

Defendant Syquia cannot both fail to prepare a proper Bill of Sale under Chapter F.A.C. 5H-26 and then claim the lack of proper warranty disclaimers therein warrant summary judgement in his favor.  Mr. Syquia was not a party to that legally deficient Bill of Sale contract and therefore cannot rely upon the existence of the defective Bill of Sale as a complete defense to his fraud.

Finally, as set forth in [DE 97] Plaintiff's Response and Counter-Statement to Defendant Syquia's Statement of Material Fact (the "Counters-statement"), there are significant material

issues of fact in dispute as well as differing material inferences to be drawn from agreed facts are sufficient to preclude summary judgment.  Plaintiff has concurrently filed and incorporates by reference his Counter-Statement, which in detail describes the presently disputed issues of material fact.

### Factual Context

Plaintiff has concurrently filed the Counter-statement [DE 97] and the Affidavit of Alejandro Zendejas in support of Plaintiff's opposition to Mr. Syquia's Motion for Summary Judgment.  Those documents contain the relevant factual context for the consideration of this Court.  A brief outline of those facts, for the convenience of the Court, appears below.

In early 2014, Zendejas had requested Nizri to locate a horse capable of carrying his son Juan Jose successfully in the Grand Prix classes and qualifying Jose for the Mexican Olympic Team.  Shortly thereafter, Nizri approached Zendejas and Jose and offered Zendejas an opportunity to acquire a unique and highly competitive show jumper known as Vorst ("Vorst"). [DE 99, Affidavit of Plaintiff Zendejas ¶ 7; DE 57 ¶ 20].

 On March 4, 2014, Nizri introduced Juan Jose to Syquia for the first time at an equestrian competition in Wellington, Florida in order that Jose might test ride Vorst. On that day, Juan Jose test rode Vorst.  When Vorst was ridden on March 4, 2014, Syquia represented to Zendejas that he was the agent for Redman. He represented to Zendejas that Redman was the legal owner of Vorst. Further, Syquia and Nizri both represented to Zendejas that Vorst was suitable and medically fit for Jose's intended use as a Grand Prix jumper capable of clearing at least 1.40 meter in competition. Neither Nizri nor Syquia disclosed to Zendejas any physical ailment or permanent injury to Vorst, nor did they disclose that Vorst had a pre-existing history

of refusing to jump in competition. [[DE 99, Affidavit of Plaintiff Zendejas ¶¶ 10-16;  DE 57 ¶¶ 21-23].

      In reliance upon the representations and concealment of material facts by both Nizri and Syquia, Zendejas agreed with Syquia, as agent of Redman, to acquire Vorst for $250,000.00. In further reliance on the representations by Syquia and the failure to disclose material facts by Syquia, as well as the other defendants, Zendejas transferred by a series of wire transfers $260,000.00 (U.S.dollars) to Redman. Zendejas accidentally transferred Redman $10,000.00 USD more than the asking price, which Redman has refused to refund despite request. [DE 99, Affidavit of Plaintiff Zendejas ¶ 15-17, 20].

      Prior to the commencement of the wire transfers containing the purchase monies, Syquia did not furnish a written Bill of Sale, as required by Florida law, let alone a Bill of Sale conforming to the requirements of F.A.C. § 5H-26.003-.004, containing disclosures of dual agency, commissions, statements of warranties disclaimed and acknowledgement by the buyer of those disclaimers.  [DE 57 ¶ 29, 114-128].   Mr. Syquia has admitted earning $ 33,750 in commissions on the purchase and sale of Vorst.  [DE 92-1 at 8, Syquia's Answer to Plaintiff's Interrogatory # 14].  Syquia and Nizri later voluntarily, and without settlement, refunded their commissions back to Zendejas once the defects in the horse were discovered and Syquia and Nizri were confronted. [DE 57 ¶ 30; DE 99, Affidavit of Plaintiff Zendejas ¶¶ 19, 20].

      Only after Zendejas had successfully wired the $260,000.00 to Redman, did Redman tender a Bill of Sale for the purchase and sale of Vorst.  [DE 57-2; DE 99, Affidavit of Plaintiff Zendejas ¶ 20].   The Bill of Sale does not comply with F.A.C. § 5H-26.003 and .004 in that it did not properly disclaim either the implied or express warranties of merchantability and warranties of fitness for a particular purpose, nor disclose the commissions, the dual agency of

4

Nizri nor provide the acknowledgement by Seller of the terms of the sale and disclaimers, if any. [DE 57 ¶¶ 30, 113-128].

## Relevant Procedural History

On September 1, 2015, Plaintiff filed his First Corrected Complaint [DE 5], which corrected a typographic error in his original Complaint [DE 1]. Thereafter, on November 9, 2015, Defendant Syquia filed his Answer [DE 23] to the First Corrected Complaint, within which Syquia asserted the Affirmative Defense of the Economic Loss Rule. [DE 23 at 9, Affirmative Defense #6]. Plaintiff moved to Strike the ELR Affirmative Defense on December 1, 2015 [DE 28 at 7-8, ¶¶ 12-13]; however, before a ruling on that Motion to Strike, Plaintiff filed a First Amended Complaint on April 8, 2016 [DE 57], to which Syquia filed an Answer on April 22, 2016 [DE 60], again asserting the ELR as an Affirmative Defense. [DE 60 at 9-10, Affirmative Defense #5]. On July 22, 2016, Defendant Syquia then brought his Motion for Summary Judgment. [DE 95].

## Argument

### I.    Threshold consideration of the fallacy of Syquia's logic.

Defendant Syquia argues in his Motion for Summary Judgment as to Counts VI (fraud) and Count VII (negligent misrepresentation) that summary judgment: (a) the tort claims are inextricably intertwined with the breach of contract and breach of warranty claims against Syquia's principal, Defendant Redman [DE 95 at 1-1]; (b) "as such", Plaintiff's tort claims "are barred by the Economic Loss Rule or alternatively" (c) Plaintiff's tort claims are barred "by simple contract principles." Plaintiff Zendejas addresses each argument *ad seriatim* below. However, there is an inherent fallacy in the logic of Syquia's arguments that should be a

threshold consideration for the Court and which support the denial of Syquia's Motion for Summary Judgment.

Syquia argues that the ELR provides that where there is a breach of contract claim against *any other defendant* in a complaint, then that Rule bars claims in tort against *other* defendants not in privity with the plaintiff.   This false logic misconstrues the proper scope and application of the ELR, which only applies to parties in privity with one another.

## II.    Defendant Syquia is not entitled to invoke the ELR to obtain Summary because he was not in privity of contract with Plaintiff and faces neither breach of contract claim nor breach of warranty claims from Plaintiff.

Mr. Syquia was never in privity of contract with Plaintiff and consequently Syquia does not face either breach of contract nor breach of warranty claims.   When the ELR is applied in Florida to tort claims to measure their independence to contract claims, they are measured with respect to the facts support contract claims *against the same party* against whom the tort claims are also brought.   Even Syquia's cited case law [DE 95 at 11] is clear on that point:  "Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from the acts that breached the contract." *Rubesa v. Bull Run Jumpers, LLC,* 2010 WL 376320 at *3 (citing *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238, 1239 (Fla. 1996) and see also *Sarkis v. Pafford Oil Co., Inc,* 697 So.2d 525 (1st DCA 1997) ("[f]raud in the inducement to make a contract is not barred by the economic loss rule"); and see *Strickland-Collins Construction v. Barnett Bank of Naples,* 545 So.2d 476 (Fla. 2d DCA 1989) ("[t]his rule is based on the premise that parties to a contractual relationship have allocated their respective rights and remedies and consequently it is inappropriate to introduce tort remedies").

Therefore, *Rubesa* is wholly distinguishable from the present case because that case concerned two parties in privity where the tort claims  "regarding ]the horse's] performance go

the heart of the parties' contractual agreement." *Rubesa* at *3.  In contrast to the adverse parties in *Rubesa,* Mr. Syquia was never in privity of contract with Plaintiff Zendejas and Syquia denies liability for the contractual obligations and debts of his principal, Ms. Redman. [DE 95 at 18, ¶ 68].  Indeed, all of the precedent the Court recognizes in *Rubesa*  concerns  **parties in privity with one another.**  See, e.g.  *Int'l Star Registry v. Omnipoint Marketing, LLC,* 510 F.Supp 2d 1015, 1025-26 (SDFL 2008); *Premix-Marbeltite Manufacturing Corp. v. SKW Chemicals, Inc.*, 145 F.Supp.2d 1348, 1358 (SDFL 2001) (describing Florida's ELR as "enigmatic");  *Indemnity Ins. Co. v. Am. Aviation, Inc.,* 891 So.2s 532, 537 (Fla. 2004); *HTP, Ltd. v. Lineas Aereas Costaricenses, S.A., 685 So.2d 1238,* 1239 (Fla. 1996), *Hotels of Key Largo, Inc. v. RHI Hotels, Inc.,* 694 So.2d 74 (3d DCA 1997).

 Because Mr. Syquia's fraud was separate and apart from Defendant Redman's performance and breach of the contract, Plaintiff's claims in tort against Mr. Syquia are not precluded by the ELR. *Rubesa*, supra at *3, citing *Medalie v. FSC Secs. Corp*., *87 F.Supp. 2d, 1305 (SDFL 2000),* citing *Hotels of Key Largo*, supra. ("the fraud must be separate and distinct **from the breaching party's** performance of the contract.") [emphasis added].

## II.    Summary Judgment.

### 1.    The Standard.

A party is entitled to summary judgment only when there is no "genuine issue as to any material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The moving party bears the burden of showing that there are no genuine issues of material fact that should be  decided at trial.  *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 159 (1970); *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991).  A factual dispute is genuine where the evidence

is such that a reasonable fact-finder could return a verdict for the non-moving party. *Patterson & Wilder Constr. Co., Inc. v. United States*, 226 F.3d 1269, 1273 (11th Cir. 2000). In deciding a motion for summary judgment, a court must view all evidence and inferences in the light most favorable to the non-moving party. Clark, 929 F.2d at 606. As the Eleventh Circuit has repeatedly explained: "All reasonable doubts about the facts should be resolved in favor of the non-movant. If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." *Id.*

Defendant Syquia invites the Court to resolve, at the summary judgment stage, disputed facts and disputed inferences to be made from material facts. Syquia wants the Court to infer that Syquia's fraud is *not* separate and distinct from Redman's breach of contract action. [DE 95 at 15, ¶ 59]. However, later in his argument, Syquia makes the argument that "[a]n agent who acted in the course of his employment for his disclosed principal cannot be held liable for the contractual obligations or debts of his principal." [DE 95 at 18, ¶ 68], citing *Phillip Schwartz, Inc. v. Gold Coast Graphics, Inc.,* 623 So.2d 819 (4th DCA 1993). Those statements are inapposite.

The factual and legal questions Mr. Syquia wants the Court to prematurely decide at this early stage in the proceedings are whether Mr. Syquia entitled to summary judgment as to the tort claims against him pursuant to the ELR because his principal also faces a breach of contract claim; or, is Mr. Syquia not responsible for the breach of contract of his principal, in which case the ELR does not prohibit the tort claims against him because there is no breach of contract liability in which those tort claims may collapse? Resolving one or both of those questions in turn depends on disputed issues of fact as to Mr. Syquia's contractual privity with Plaintiff.

Summary   judgment   is   inappropriate even where the parties agree on the basic facts, but disagree about the inferences that should be drawn from these facts.  If reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment. *Patterson & Wilder Constr.,* 226 F.3d 1269, 1273 (11th Cir. 2000), citing *Burton v. City of Belle Glade,* 178 F.3d 1175, 1186-87 (11th Cir.), *reh'g denied*, 193 F.3d 525 (1999), quoting *Clemons v. Dougherty County*, 684 F.2d 1365, 1368-69 (11th Cir.1982).   See also *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the  State of Ala.,* 941 F.2d 1428, 1437 (11th Cir. 1991).   As this Court recently noted, "in reviewing the record  evidence,  the  Court  may  not  undertake  the  jury's  function  of weighing  the  evidence  properly offered by the Parties."   *Cortina v. F.A.D. Detective & Sec. Services, Inc*., Case No. 11-20732-CIV, 2011 WL 6025638, at *1 (S.D. Fla. Dec. 1, 2011) (slip copy) (citations omitted).  In the Eleventh Circuit, opinion  evidence  alone  can  be  sufficient to preclude  summary  judgment, *Poe v. Sears, Roebuck & Co., Inc.,* 1 F. Supp. 2d 1472, 1477 (N.D. Ga. 1998), and conflicting opinions may preclude a finding that no genuine issues exist.  *Wise v. Hartford Life and Accident Ins.* Co., 360 F. Supp. 2d 1310, 1324 (N.D. Ga. 2005).  Courts prefer to try cases on their merits, *Wilson v. Salomon*, 923 So. 2d 363 (Fla. 2005) and "would 'rather wrongly submit a close question to the jury than wrongly deny a litigant his or her day in court.'"   *Kendall v. Cobb County, Ga.,* 14 F. Supp. 2d 1342, 1346-47 (N.D. Ga. 1998) (quoting *McKenzie v. Atlantic Richfield Co.*, 906 F. Supp. 572, 576-77 (D. Colo. 1995)); see also *Collins v. Beazer Homes USA, Inc.,* 334 F. Supp. 2d 1365, 1377 (N.D. Ga. 2004) (denying summary judgment in a "close case").

**2.  Alternatively,  whether  the  torts  alleged  against  Mr.  Syquia  are  independent from the breach of contract claim alleged against Ms. Redman is, in and of itself, a material issue of fact.**

Mr. Syquia would have this Court determine on summary judgment that his own wrongful acts were not independent from the breach of contract by Ms. Redman because Mr. Syquia and Mr. Zendejas were in privity of contract with one another. [DE 95 at ¶ 51]. However, it is a disputed issue of material fact whether the Syquia and Zendejas were in privity with one another,  as set forth in Plaintiff's Counters-statement and Affidavit  [DE 98 and 99], Therefore, Syquia is not entitled to summary judgment.  *See, e.g., Occu-Health, Inc. v. Miss. Space Services,* No. 1:06CV159-HSO-JMR, 2008 WL 2037443 at *6 (S.D. Miss. May 9, 2008) (holding that "material questions of fact remain as to [p]laintiff's tortious breach of contract claim, including, but not limited to, whether there was . . . an independent tort committed by [d]efendants"); *Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of North. Am.,* 763 So. 2d 429, 434-35 (Fla. 5th DCA 2000) (stating that a trial court should not resolve issues of fact on a motion to dismiss).

### III.   Defendant Syquia is not entitled to Summary Judgment under the Economic Loss Doctrine.

#### 1.   The Economic Loss Rule and The Independent Tort Doctrine in Florida.

Until the Florida Supreme Court, upon certification of a question by the 11th Circuit, drastically contracted the ELR back to its originally-intended area of products liability, see *Tiara Condominium Association Inc. v. Marsh & McLennan Companies,* 110 So. 3d 399 (Fla. 2013), the exceptions to the ELR threatened to consume the rule itself.  See Chapman, Avery "The Economic Loss Rule", Chapter 23, *Business Litigation In Florida 2012, §§ 23.10-23.12* (The Florida Bar, 2012).  See also *Fla. Power & Light Co. v. Westinghouse Elec. Corp.,* 510 So.2d 899 (Fla. 1987); *Moransais v. Heathman,* 744 So. 2d 973, 983 (Fla. 1999).  However, by 2013, with *Tiara,* the Florida Supreme Court finally contracted the rule, explaining that "to the extent that they have applied the economic loss rule to cases other than products liability." Justice

Pariente concurred that the majority's decision was intended to clarify that the ELR was only supposed to apply to products liability cases. *Id.*

Fraud in the inducement is a tort independent of a breach of contract. *HTP, Ltd. V. Lineas Aereas Costarricenses, S.A.*, 685 So.2d 1238 (Fla. 1996). Furthermore, *HTP* reached back 30 years earlier and cited *Griffith v. Shamrock Village, Inc.*, 94 So.2d 854 (Fla. 1956) for the proposition that a tort is precluded unless it is independent from a breach of contract. In *Griffith* the court held: "But where the acts constituting a breach of contract also amount to a cause of action in tort there may be a recovery of exemplary damages upon proper allegations and proof." *Id.* at 858 citing 25 C.J.S. Damages 120, pp. 716-717. Thus the adoption of the IDP predated the adoption of the ELR in Florida.

The economic loss doctrine was actually adopted almost 30 years after *Griffith* by the Florida Supreme Court in *Florida Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987), which is well after *Griffith*. However, even *Florida Power & Light* acknowledged the independent tort doctrine has a long historic basis predating the adoption of the economic loss rule. *Id.* at 902 ("In fact, the economic loss rule has a long, historic basis originating with the privity doctrine, which precluded recovery of economic losses outside a contractual setting.") In short, the independent tort doctrine predates the economic loss rule.

The Florida Supreme Court has repeatedly found "that fraud in the inducement is a recognized exception to the economic loss rule." *American Vintage Gun and Pawn, Inc. v. Hogan Manufacturing, LLC, et al.*, Case No. 8:12-cv-25-T-24-MAP, DE 20 therein, (M.D.FL. 2012), citing *New Lenox Indus., Inc. v. Fenton*, 510 F. Supp. 2d 893, 907 (M.D. Fla. 2007) ("Even if 'the fraud concerns the subject matter of the contract,' so long as the alleged fraud is

'pre-contractual' the economic loss rule does not bar recovery. *Bradley Factor,* 86 F. Supp. 2d at 1145." *American Vintage,* supra.

### 2. Syquia's fraud was extraneous, independent not interwoven into the contract.

Therefore, assuming *arguendo* that the ELR applies to Syquia's tort claims (a point Plaintiff does not concede, Mr. Syquia's conduct occurred before the execution of the Bill of Sale between Plaintiff and Redman and before the formation of that contract.  Therefore, that conduct is considered "extraneous" to the contract and tort claims about that conduct are allowed by the ELR.   The distinction in types of tortious conduct articulated in *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.,* 685 So.2d 1238 (Fla. 1996): fraud "extraneous" to the contract versus "interwoven fraud", has since been refined as having a temporal component: If the allegedly fraudulent statement occurred *prior to* the execution of the contract, then the fraud is "extraneous" to the contract and is an independent tort.  *See*, *e.g.*, *Bradley Factor, Inc. v. United States*, 86 F. Supp. 2d 1140, 1145 (M.D. Fla. 2000) ("Defendant's act of [fraud] was pre-contractual and, therefore, does constitute fraudulent inducement despite the fact that the fraud concerns the subject matter of the contract."); *Nautica Int'l, Inc. v. Intermarine USA, L.P.*, 5 F. Supp. 2d 1333 (S.D. Fla. 1998); *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1566 (S.D. Fla. 1996); *Leisure Founders, Inc. v. CUC Int'l, Inc.*, 833 F. Supp. 1562, 1573 (S.D. Fla. 1993) ("True fraudulent inducement attends conduct prior to striking the express or implied contract and alleges that one party tricked the other into contracting."); *Brass v. NCR Corp.*, 826 F. Supp. 1427, 1428 (S.D. Fla. 1993) (holding that "in a fraud in the inducement setting, the intentional fraud which occurs and is completed prior to the formation of the contract can be characterized as 'independent' of the contract); *Williams Elec. Co. v. Honeywell, Inc.*, 772 F. Supp. 1225, 1237 (N.D. Fla. 1991) ("Fraud in the inducement . . . addresses a situation where the

claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort.") (footnote omitted); *see also Pulte Home Corp. v. Osmose Wood Preserving, Inc.*, 60 F. 3d 734, 742 (11th Cir. 1995) ("Fraud in the inducement and deceit are independent torts for which compensatory and punitive damages may be recovered.") (quoting *Burton v. Linotype Co.*, 556 So. 2d 1126, 1128 (Fla. 2d D.C.A. 1989), *review denied*, 564 So. 2d 1086 (Fla. 1990)). *Cf. La Pesca Grande Charters, Inc. v. Moran*, 704 So. 2d 710 (Fla. 5th D.C.A. 1998); *Budgetel Inns, Inc. v. Micro Sys., Inc.*, 8 F. Supp. 2d 1137 (E.D. Wis. 1998).

Put another way, Defendant Syquia is mistaken in his reliance on the "interwoven" analysis set forth in *Huron Tool and Engineering Co. v. Precision Consulting Services, Inc.*, 209 Mich.App. 365, 532 N.W.2d 541 (1995) which was approved by the Florida Supreme Court in *HTP* and later cited by the Middle District of Florida Court in a case factually distinguishable, *Dantzler Lumber & Export Co. v. Bullington Lumber Co., Inc.*, 968 F. Supp. 1543, 1547 (M.D.Fla.1997) [(fraud committed was not in the inducement because the fraudulent conduct was *post-contractual*. *See id.* at 1547.

*Huron*'s limitation on the fraudulent inducement exception has since been severely criticized. *Bradley Factor, Inc.* v. *U.S.,* 86 F. Supp. 2d 1140 at 1145 (M.D.Fl. 2000), citing *Budgetel Inns, Inc. v. Micros Systems, Inc.*, 8 F. Supp. 2d 1137 (E.D.Wis.1998). "The *Budgetel* court stated the limitation of the inducement exception to claims not involving the quality or character of the subject matter of the contract is "seriously flawed." *See id.* at 1146. The court stated that in practice the limitation to the exception 'is so broad that is swallows the exception whole.' The court explained that:

> The *Huron* limitation suggests a misunderstanding of the tort of fraud in the inducement. In all fraud in the inducement cases the alleged fraudulent misrepresentations will either concern the quality and characteristic of the underlying subject matter, because that is the definition of "fraud in the inducement" itself ...

Because the contract concerning the "particular thing" will always be considered "interwoven" with the deceit under *Huron,* fraud in the inducement claims will always be barred. The tort, after all, is inducing someone to enter into a contract, so to say it does not apply where the tort involves the contract or its subject matter analytically makes no sense. " *Id.* at 1147.

"The court also recognized that the tort of fraud in the inducement, by definition, is independent of the contract in that the fraudulent inducement occurs prior to the formation of the contract. *See id.* According to *Budgetel,* the problem with *Huron* is that "it transforms a claim that a contract is invalid because procured by fraud into a dispute about the terms of a contract." *See id.* at 1148. The *Budgetel* court also disagreed with the Florida courts' application of *Huron* in *HTP,* and *Hotels of Key Largo. See id."  Bradley Factor, Inc.,* 86 F. Supp. 2d at 1145.

Herein, Defendant Syquia contends that Plaintiff's fraud claim is interwoven to the subject matter of the contract and therefore constitutes fraud in the performance, not fraud in the inducement. [DE 95 at 14 ¶ 58].     However, that analysis is misplaced because, Defendant Syquia's acts of omitting  the history of Vorst as being a "dirty stopper" and not revealing the PPE findings were *pre-contractual* and, therefore, do constitute fraudulent inducement despite the fact the fraud concerns the subject matter of the contract. *Bradley Factor, Inc.*, 86 F. Supp. 2d at 1145.  As well, "[t]he fact that the compensatory damages sought in both counts are the same has no bearing on the independence of the two claims" *Bradley Factor, Inc.*, 86 F. Supp. 2d at 1144, citing *La Pesca Grande Charters, Inc. v. Moran,* 704 So. 2d 710 (Fla. 5th DCA 1998).

Additionally, Defendant contends that Plaintiff failed to allege any independent facts of wrongdoing in his claims for fraud that are distinguishable from the facts alleged in the breach of warranty claims. [DE 95 at 15 ¶ 57].   However, the Middle District in *Bradley* considered this same argument and rejected it: "The factual inquiry supporting the breach of warranty claim is the language of the contract itself.  Fraud in the inducement occurs where one party's ability to

14

negotiate and make informed decisions as to the contract is undermined by the other party's pre-contractual fraudulent behavior. See *Hotels of Key Largo*, 694 So. 2d at 77. … Plaintiff's ability to negotiate or make informed decisions" was thus impaired by the pre-contractual torts of Defendant. *Bradley Factor, Inc.*, 86 F. Supp. 2d at 1145-46 ("The Court concludes the factual inquiries supporting the fraud and breach of warranty claims are distinguishable"). *Id.*

Therefore, Syquia is incorrect that the ELR requires summary judgment in his favor on the fraud and negligent misrepresentation causes of action because Mr. Syquia is wrong in concluding that his tort claims are interwoven into a contract claim between two other parties in privity. As alleged, Syquia's fraud and misrepresentations occurred before the contract was made between Plaintiff and another Defendant, Eugenie Redman. [DE 57 at 6, ¶ 23]. Therefore, and putting aside for the moment the fact that the contract was between Plaintiff and the other Defendant, Redman, it is clear that Syquia's conduct *predated* the contract and thus is based on conduct independent from Redman's breach of contract. It is both appropriate that Syquia face those claims and that neither the ELR nor the IDP bars those tort claims. That is true, even amongst parties in privity. See, e.g. *Puff 'N Stuff of Winter Park, Inc. v. Bell,* 683 So.2d 1176, 1180 (Fla. 5th DCA 1996) (Harris, J., concurring):

> Would it not be more in keeping at least with the spirit of the original economic loss cases to consider the relationship between the inducing representation and the essential requirements, express or implied of the contract agreed to by the parties? When one party to the contract sits at the bargaining table with deceit in his heart, all bets are off.

Further, it has been commonly stated that "fraud unravels everything," Peter A. Alces, *The Law of Fraudulent Transactions* §3.03[1], at 3-5 (1989) and "fraud destroys all consent." *Ganley Bros., Inc. v. Butler Bros. Bldg. Co.*, 212 N.W. 602, 603 (Minn. 1927), *quoted in* R. Joseph Barton, *Drowning in a Sea of Contract: Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 Wm. & Mary L. Review 1789, 1836 (2000).

Since *Tiara,* Florida courts and the 11th Circuit have focused on whether a tort claim, when brought alongside a contract claim against parties in privity with one another, was "independent" of that breach of contract claim and have looked at the nature of the tortious conduct alleged.   The 11th Circuit did note that the independent tort doctrine still applies in considering whether to allow tort claims to proceed concurrently with contract claims in disputes between parties in privity.   See *Lamm v. State Street Bank and Trust*, 749 F.3d 938, 947 (11th Cir. 2014) ("*Tiara* may, however, have left intact a separate hurdle, namely that 'a party still must demonstrate that…the tort is independent of any breach of contract claim.' While the exact contours of this possible separate limitation, as applied post-*Tiara,* are still unclear, the standard appears to be that 'where the breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence.' *U.S. Fire Ins. Co. v. ADT Sec. Servs., Inc.,* 134 So.3d 477, 480 (2d DCA 2013)") ("Here, USFI alleged that ADT failed to disclose to M.A. Federal that the FCC was transitioning from analog signals to digital signals, failed to replace the analog-based system when it became obsolete after the transition, and failed to notify M.A. Federal when the analog-based system ceased transmitting signals to ADT's monitoring service. USFI alleged that M.A. Federal would not have contracted with ADT if it had known that the backup system would be rendered useless after the transition. These allegations — which must be accepted as true — address a material component of the contract between the parties, and they amount to allegations of an independent tort. *Floyd v. Video Barn, Inc.,* 538 So.2d 1322, 1324 (Fla. 1st DCA 1989) (citing cases for the proposition that where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be considered negligence)").

The Court in *Lamm* in turn relied upon courts in the Southern and Middle District of Florida, which had previously declined to dismiss claims for negligence or fraud where conduct alleged could be brought as tort independent of the contract also sued upon.  See *Marian Farms, Inc. v. SunTrust Banks, Inc.,* 35 So.3d 363 (5th DCA 2014) (claims against depository bank for negligence in accepting forged loan documents, personal guarantees, and corporate resolution of corporate customer could be brought as torts independent of depository agreement); *Rushing v. Wells Fargo Bank,* N.A., 752 F.Supp.2d 1254, 1263 (M.D.Fla.2010) (allowing tort claim against bank where account agreement acknowledged that bank "could be held liable for losses caused by [its] own negligence").  (Note that the 11th Circuit only dismissed the negligence claims of Mr. Lamm because the Court could not find that his bank had an independent duty to supervise his investment advisor).  *Lamm, supra.*

Florida's ELR, however, remains "enigmatic."  *Premix-Marbeltite,* supra*, 145 F.Supp.2d at 1358 (S.D.FL. 2001) and courts tend to want to see claims tried on their merits .  *Wilson v. Salomon*, 923 So. 2d 363 (Fla. 2005).  In the post-*Tiara* world, "[n]ot unexpectedly" Syquia's counsel has attempted to "take advantage of the inchoate shift away from the economic loss rule, using intelligent pleading to make tort claims appear to be companions with, rather than interlopers among, breach of contract claims…." *Tort and Contract Actions: Strange Bedfellows No More in the Wake of Tiara Condominium,* 87 Fla.Bar.J. 87 (2013) at 41.

This very Court, as late as this time last year, decided that it would not grant a motion to dismiss fraud in the inducement and fraudulent misrepresentation claims on grounds that those claims were barred by the ELR:  "[g]iven the lack of clarity of the Florida economic loss rule as identified in *Lamm,* the Court will defer addressing this doctrine at this time. *Kolmat Do Brasil,*

*LDTA v. Evergreen United Investments, LLC, et al.,* Case no. 14-81320 (SDFL June 5, 2015) (Marra, U.S.D.J

What this means to the purchaser of a horse such as Plaintiff Zendejas is that he should be allowed to proceed on theories of torts of fraud and negligence tort as well as breach of contract, particularly when those tort claims are based upon conduct occurring before contract formation by a party not in privity of contract with Mr. Zendejas. *Tiara Condominium Ass'n Inc. v. Marsh & McLennan Companies, Inc.,* 110 So.3d 399, 408-09 (Fla.2013) (Pariente, J., Concurring) ("… when the breach of contract is attended by some additional conduct which amounts to an independent tort …[] such a breach can constitute negligence.") (quoting *Elec. Sec. Sys. Corp. v. S. Bell Tel. & Tel. Co.,* 482 So.2d 518, 519 (Fla.Dist.Ct. App.1986)).

### 3. Horses are not "products" and this is not a products liability case to which the ELR applies.

Syquia cannot avail himself of the ELR to gain summary judgment for another reason. In the post-*Tiara* world, and as Syquia concedes, the ELR is contracted back to products liability actions, as Justice Pariente concurred was the appropriate limitation of the Rule. Syquia attempts to shoehorn the sentient, mutable horse Vorst into that constricted box of a doctrine meant for inanimate, manufactured objects. He does this by making much of the training and intended use of the Horse as a show jumper. [DE 96 at 8 ¶ 38]. However, this Court has been clear in this case that the intended use of Vorst is irrelevant to determining the proper categorization of the horse Vorst as a product. [DE 56 at *11].

Indeed, Syquia himself equivocates, stating that a horse is "a "Good" *or* a 'Product" under Florida's Uniform Commercial Code." [DE 95 at 8] [emphasis added]. Syquia concedes that the UCC does not define "product." [DE 95 at 8]. Thereafter, Syquia embarks on a a

circuitous route of false logic to define the animate, sentient Vorst as an inanimate object to make this into a products liability case, thus potentially subject to application of the ELR,.

Syquia ignores the difference between the mutability of animals and the fixed nature of manufactured, inanimate objects.  The theme in the states considering animals in products liability cases is that the mutability of animals removes them from the definition of "products" because "living creatures are by their nature engaged in a continuous process of internal development and growth" and because "they are participants in a constant interaction with the environment around them by sheer virtue of their development", living creatures have no "fixed nature" and, thus, cannot be "products" for purposes of a product-liability action as a matter of law. *See, e.g., Latham v. Wal-Mart Stores, Inc.*, 818 S.W.2d 673, 676 (Mo. Ct. App. 1991) ("We tend to agree with the Illinois view, that due to their mutability and their tendency to be affected by the purchaser, animals should not be products under § 402A as a matter of law".) (citing *Anderson v. Farmers Hybrid Cos., Inc.*, 408 N.E.2d 1194, 1195-1200 (Ill. Ct. App. 1980) ("living creatures are not part of the extensive list of products mentioned in the commentary to section 402A of the Restatement (Second) of Torts [product liability]"); *see also Whitmer v. Schneble*, 331 N.E.2d 115, 118 (Ill. Ct. App. 1975); *Kaplan v C Lazy U Ranch,* 615 F.Supp. 234 (D.Colo. 1985) ("[g]enerally, living things do not constitute 'products' within the scope of the strict tort liability doctrine which requires that a product's nature be fixed when it leaves the manufacturer's or seller's control" citing *Anderson,* supra, and *Whitmer,* supra).  See also *Blaha v. Stuard,* 640 N.W.2d 85, 89 (S.D. 2002) ("living creatures have no fixed nature and cannot be products as a matter of law.")

The courts in *Anderson* and *Whitmer* explained that the purpose of imposing strict liability on sellers of products would be defeated if such liability applied to "products whose

character is easily susceptible to changes wrought by agencies and events outside the control of the seller, which is the case with living creatures." *Anderson*, 408 N.E.2d at 1199. Given the changeable nature of living creatures and the potential influence on them of exterior events and conditions that are generally outside the seller's and breeder's control, one can draw the obvious conclusion that animals are not products. *Id.*   A "product", for purposes of product liability laws, must be of a fixed nature at the time it leaves the seller's control. *Id*.   Because living creatures have no fixed nature at the time they enter the stream of commerce, they are not products as contemplated by product liability laws. *Id.; see also Blaha v. Stuard*, 640 N.W.2d 85, 89 (S.D. 2002) (holding that dogs are not products as a matter of law because they are not fixed in nature); *Coogle v. Jahangard*, 271 Ga. App. 235, 237, 609 S.E.2d 151,153 (Ga. Ct. App. 2005) (pets are not products, because "[t]he inherent differences between a pet dog and a manufactured product are obvious, including whether the performance or behavior of these two is reasonably predictable").   Syquia directly acknowledges the mutable nature of the equine species, explaining that horses such as Vorst are "typically traded throughout their lives *as their physical and mental abilities peak and wane*…."  [DE 95 at 9] [emphasis added].

In post-*Tiara* Florida, where the ELR is to be constrained in application to products liability cases, a horse is not a product and therefore the ELR cannot and should not be applied to the underlying claims and facts to grant Defendant Syquia summary judgment.

## IV.   "Basic contract principals" do not bar tort claims against Syquia.

Plaintiff has already set forth the first prong of response to this argument – that Syquia was not in privity of contract with Plaintiff and so faces no breach of contract claim into which the tort claims collapse.

The second prong of response to this argument is much simpler: Syquia, while not in privity of contract with Plaintiff, first failed to provide any contract at all contemporaneously with the purchase and sale of Vorst, and then provided a form of Bill of Sale [DE 57-2] which did not conform to F.A.C. § 5H-26.003-.004.     To take Syquia's argument to its end *ad absurdum,* he wants this Court to accept the premise that he can fail to provide a legal contract and then rely upon a form of an illegal contract he provided to claim bar of tort claims against him and absence of liability for the contractual obligations of his principal.  [DE 95 at 18, ¶¶ 67-69].

That argument makes no sense whatsoever, is in any event contrary to the law in Florida and the 11th Circuit and the Court should reject that argument out of hand.

## V.    Conclusion.

Based on the foregoing argument and disputed issues of material fact, Plaintiff Alejandro Zendejas respectfully requests that this Court deny the Defendant Syquia's Motion for Summary Judgment  as to Counts VI an VII.


                                        Respectfully submitted,


                                        *Avery S. Chapman*
                                        Avery S. Chapman, Esq.
                                        FL Bar No. 517321
                                        CHAPMAN LAW GROUP, PLC
                                        12008 South Shore Blvd., Suite 107
                                        Wellington, FL 33414
                                        (Tel.) 561.753.5996
                                        (Fax) 561.753.9966

                                        *T. Randolph Catanese*
                                        T. Randolph Catanese, Esq.
                                        Admitted Pro Hac Vice
                                        Calif. Bar No. 110308
                                        David Y. Yoshida, Esq.

Admitted Pro Hac vice
Calif. Bar No. 272578
CATANESE & WELLS, A Law Corporation
31255 Cedar Valley Drive, Suite 213
Westlake Village, California, 91362
Phone: 818-707-0407
Fax: 818-707-1161

*Attorneys for Plaintiff*

### Certificate of Service

I HEREBY CERTIFY that on the date appearing on the first page of this document, I electronically filed the foregoing with the document with the Clerk of the Court using the CM/ECF filing system, which will then serve  all counsel of record or pro se parties on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by the CM/ECF system or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*Avery S. Chapman*

Avery S. Chapman, Esq.

**Amanda Simmons Luby, Esq.**
Shutts & Bowen
300 S Orange Avenue
Suite 1000 PO Box 4956
Orlando, FL 32802-4956
407-423-3200
Email: asimmons@shutts.com

**John Robert Hart, Esq.**
Carlton Fields Jorden Burt, P.A.
525 Okeechobee Blvd.
Suite 1200
West Palm Beach, FL 33401
561-659-7070
Fax: 561-659-7368
Email: jhart@CFJBLaw.com

**Sarah Cortvriend, Esq.**
Carlton Fields Jorden Burt, P.A.
CityPlace Tower
525 Okeechobee Blvd., Suite 1200
P.O. Box 150
West Palm Beach, FL 33402-0150
561-659-7070
Fax: 561-659-7368
Email: scortvriend@CFJBLaw.com